UNITED STATRS DISTRICT COURT

DISTRICT OF COLUMBIA

---

UNITED STATES                           :

    vs.                                 :          **Case No. 1:21-cr-00036**

GINA MICHELLE BISIGNANO          :          **(Corrected Revised Report Errata para 2(e))**

                                             :

**DEFENDANT GINA MICHELLE BISIGNANO's 7/5/2023 STATUS REPORT TO THE COURT RE: FINDING AND ENGAGING NEW COUNSEL**

TO THE. HONORABLE CARL J. NICHOLS JUDGE OF SAID COURT AND

KIMBERLY L. PASQUEL, ESQ. ASSISTANT UNITED STATES ATTORNEY

Defendant Gina Michelle Bisignano, by and through her Defense (Advisor), Barry D.

Silbermann, Esq. hereby responds to the Court's Order for diligence status for  Gina

Bisignano to find and engage new counsel.

1. <u>Public Defender's Office.</u>

    a.  The ASUA notified Shelli Peterson, Supervisor in the DC Public Defender's

        Office to contact me and I thereafter contacted Ms. Peterson by email

        requesting the Financial Affidavit form.  Ms. Peterson responded. She called

        me to confirm that the case has been referred to Craig Harbaugh, Esq. in the

        Los Angeles, Public Defender's Office.  He was Gina's attorney when she was

        before the California Central District Court.

b. Ms. Bisignano was called by Jonathan Arminoff, Esq. of the Los Angeles Public Defender's Office last Tuesday. I was invited onto the call. The background of events was discussed, and a call arranged for Ms. Bisignano with Jonathan Arminoff and Craig Harbaugh that occurred Thursday 6/29/2023.

c. They said they are agreeable to meet with me to intake my observations about what has occurred with Gina from December 2020 through the present leading to her being subpoenaed to testify in other January 6 defendant cases, her interactions with the AUSAs and her prior attorney and leading to the termination of Charles Peruto, Jr., Esq.

d. The Financial Affidavit was completed and signed and sent by email 6/30/2023 to Shelli Peterson in DC cc Craig Harbaugh in LA. Financial qualification decision pending.

e. Gina Bisignano is comfortable with both attorneys but is waiting on private attorney vetting in progress before deciding.

2. Private Attorney Vetting.

a. The issue with private attorney vetting is matching the attorney with January 6 support organization funding purportedly available to underwrite their representing her. This has required calls initiated by the client and by me to flow the process around the demands on time of underwriting sources and trial schedules of the attorneys. All know of the time restraints on being selected for representation in this case.

b. Three qualified attorney candidates are interested, are in communication and are on the short list.

c. Some have been excluded because of conflict of interest. All have January 6 defendant trial experience and a willingness to listen to my perspective of Defendant's counsel-AUSA experience since and after her arraignment in Los Angeles through the present, briefly described in Section 3, hereinafter, for possible Constitutional rights affected, after new counsel reviews the herein case file and any evidence.

d. They have all been advised of the October 30, 2023, trial date, stated herein for advisory purposes to the Court without waiver of rights of the Defendant that any attorney who substitute's in may or might have a basis to assert.

e. This process to complete vetting and yes or no on underwriting to notification to the Court and substitution of attorney is two (2) more weeks, including Gina having time to understand more thoroughly about her case itself, which, I believe, she did not fully understand when she was summoned to appear before this honorable Court on May 4, 2023 and does not yet fully.

3. Defendant's (New Counsel's) and the Court's Interest, prior to trial, in Assessing if Defendant's Right's Have been abrogated by coercion by potential violations of the DOJ's Justice Manual, and/or 18 U.S.C. 242 (acting under color of law) and 18 U.S.C. 2340A (prohibited "Torture") or Defendant's 5th, 6th, 8th or 14th Amendment Rights.

DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL

a. This is to further advise the Court that the termination of Charles Peruto, Jr. as defense counsel for a change in defense counsel, public defender or private, is necessitated to allow Defendant, through new counsel to redress issues evolved in this court by:

    i.   alleged potential coercion by potential egregious violations by DOJ of the DOJ's Justice Manual, and/or 18 U.S.C. 242 (acting under color of law) and 18 U.S.C. 2340A (prohibited "Torture") (her unlawful incarceration in an Oklahoma prison for purposes of inflicting emotional trauma);

- Judge McDermott, California Central District Federal Court imposed Defendant with $170,000 bail and said, in pertinent part, "I think the government is trying to make an example out of Ms. Bisignano and trying to make her out to be a traitor."

- On information and belief, the ASUA after bail setting by Judge McDermott went to a DC Magistrate to have Bisignano's bail revoked ex Parte, a violation of her 6th Amendment right to be represented by legal counsel in the proceeding and never argued:

    ○  DOJ Manual Section 3.2(a)2 provides, in pertinent part:

         provide, or "serve," an identical copy on the opposing

4
DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL

party (or, if the party is represented, the party's

practitioner of record), and

except for filings served during a hearing or jointly

filed motions agreed upon by all parties, declare in

writing that a copy has been served.

Defendant was represented by Craig Harbaugh, Esq. of

the Los Angeles Public Defenders office and was

representing Defendant at the time ASUA filed ex parte

with a different court, on information and belief, without

notifying Craig Harbaugh, Esq. A violation of DOJ Manual

Section 3.2(a)2 and Defendant's 6th Amendment rights;

and

- o the issue of forum shopping and not having Los

  Angles AUSA appear before Judge McDermott to

  move for bail revocation, was a violation of

  Defendant's 14th Amendment right to due process of

  law.

- By full disclosure, this is now a basis for civil action by

  Bisignano (in a California Civil suit (Los Angeles Superior

  Court Case No. 22SMCV02628) and a Tort Claims Act claim

  against DOJ and agencies denied with federal suit planned)

  in allegations of Does in DOJ under 18 U.S.C.242 for

  tortious acts under color of law.

DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL

- This may have created a conflict of interest for the AUSA for representing to this court that they did not know where Gina Bisignano was when the court asked and for not having Bisignano flown directly to this court instead of incarcerating her for two months, half in Los Angles, half in Oklahoma.

- I have been advised of the names of 25 other January 6, defendants who were also flown to the Oklahoma prison by a DOJ contract air service called "ConAir", allegedly to prevent the J6 defendants from asserting Habeus Corpus and to inflict emotional distress. When Gina asked one of her guards why she was flown to the prison, Gina was told "they say they do this to teach you a lesson." She undid Gina's leg chains so Gina could extend her leg out from cramping and pain and Gina was crying (the reason for 18 U.S.C. 2340A (prohibited "Torture").

- I will be advising new counsel to assess the above as to Gina's rights and as to whether to move for an OSC on why there should not be an investigation requested of DOJ IG Michael Horowitz.

and

ii. Her Sixth Amendment right to have <u>competent</u> legal counsel, even for plea bargaining with DOJ *(Lafler v Cooper* (2012) 566 U.S. 156

6
DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL

- Gina Bisignano did not select Charle's Peruto, Jr. as her attorney, her brother did from years prior Peruto representation of someone her brother knew.

- His fee of $75,000 cash depleted her, by family action while she was in Oklahoma prison, of her retirement reserve.

- On information and belief, Peruto was verbally and emotionally abusive to Bisignano from the start. Bisignano's first contact with Peruto was a letter she received from him while she was in the Los Angeles County Jail. She was not flown back to DC to appear at this court after being arrested while paying her bail, which was revoked by the DC Magistrate.

- Gina after thirty days in LA County Jail, was then transferred by. prison bus to San Diego then from San Diego by ConAir to the county prison in Oklahoma for nearly another month. On information and belief, she attempted to call Peruto but only spoke with his office assistant. He never called her.

- The extent to which Gina Bisignano was emotionally damaged caused by this brutal treatment by the DOJ was witnessed by the woman who took her into her home on Gina's release from prison and assessed by the clinical psychologist who as a favor to me started intaking and

7
DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL

counseling Gina from the time I me her through the present. I advised Perito of this and he ignored it.

- On information and belief, Gina Bisignano's first communication directly with Peruto was on her return to Los Angeles from Oklahoma. He told her she needed to fly to DC for her appearance in this court and she would be reimbursed for the flight. Gina told him how physically and emotionally ill she was. Her appearance was then in August 2021. Nothing was ever said or brought before the court about her DOJ forced incarceration.

b. Peruto – U.S. Attorney Coerced Plea Cooperation.

- On information and belief, Peruto represented to Gina Bisignano that if she gave cooperatives testimony for the AUSA, Bisignano would receive a favorable waiver of sentencing guidelines for a plea agreement.

- Occurrences were observed by me in the course of events leading up to Gina's May 4, 2023, appearance in DC before this court:

  o Exhibit 1, attached hereto, and incorporated herein by this reference is my email to Charles E. Peruto, Jr. dated February 26, 2023.

  o Exhibit 2, attached hereto, and incorporated herein by this reference is my email to Charles E. Peruto, Jr. dated March 22, 2023.

DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL

o  Exhibit 2, attached hereto ,and incorporated herein by this
reference is my email to Charles E. Peruto, Jr. dated April
23, 2023. Among other issues, Gina Bisignano was never
reimbursed for her August 2021 travel from Los Angles to
DC for her appearance after being released from the
Oklahoma prison.

4. Conclusion. Based on Exhibits 1, 2, and 3, and the foregoing, I am hereby
advising the court that I will be advising new counsel to assess whether
Defendant's (New Counsel's) and the Court's Interest, prior to trial, is in
Assessing if Defendant's rights Have been abrogated by coercion by potential
violations of the DOJ's Justice Manual, and/or 18 U.S.C. 242 (acting under color
of law) and 18 U.S.C. 2340A (prohibited "Torture") or Defendant's 5th, 6th, 8th or
14th Amendment Rights.

5. Section 1512(c)(2).

   a. Exhibit "3" refers to this section and the Appeals Court determination.
      Exhibit "1" is to be assessed by counsel for professional evaluation of
      whether Defendant does not satisfy any "intent" that may be required to
      sustain this charge.

   b. In addition, the DOJ Justice Manual sets forth criteria for probable cause
      for bringing this or any charge. In light of Congress having enacted 18
      U.S.C. 1505, **"Obstruction of proceedings before departments,**
      **agencies, and committees,"** issue arises of Section 1512(c)(2) violating
      the 8th Amendment prohibition of cruel and unusual punishment and no

DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL

1    probable cause existing under standard of review if Congress intended

2    1505 to be the charge.

3

4  Dated: 7/3/2023

5  Respectfully submitted,

6    *Barry D. Silbermann*

7  _____

8  Barry D. Silbermann, Attorney (Advisor) for
   Defendant Gina Michelle, Bisignano

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S STATUS REPORT ON FINDNG NEW COUNSEL