**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 21-cr-036 (CJN) |
| | : | |
| GINA BISIGNANO | : | |
| Defendant. | : | |
| | : | |

<u>**UNITED STATES' MOTION TO REVOKE RELEASE ORDER**</u>

The United States of America, by and through its undersigned attorney, respectfully moves this Court pursuant to 18 U.S.C. § 3148(b) to issue a bench warrant for Defendant Gina Bisignano for violations of the terms of her pretrial release, to revoke her pretrial release order, and to detain her pending trial.

## BACKGROUND

### I.     Gina Bisignano's Offense Conduct

On January 6, 2021, Gina Bisignano went to the United State Capitol bent on destruction. In the days before January 6, 2021, Bisignano posted on Facebook that she was "Washington DC bound #fightfortrump." ECF No. 38 at ¶ 6. She posted, "We are going to Washington DC to take ou[r] country back. The insurrection act begins!" *Id.*

On the morning of January 6, 2021, Bisignano went to the "Stop the Steal" rally at the Ellipse in Washington, D.C. When then-President Donald Trump told the crowd, "I hope Mike Pence is going to do the right thing," Bisignano responded, "I hope so, he's a deep state." *Id.* ¶ 7. After this rally, Bisignano joined other rioters in marching to the U.S. Capitol building, where Congress was meeting in a joint session to certify the Electoral College votes. *Id.* ¶ 8. As she advanced to the Capitol, Bisignano said, "we are marching to the Capitol to put some pressure on

Mike Pence." *Id.* As she advanced further, she proclaimed, "we are storming the Capitol. And I'm going up in there, I'm going to break into Congress." *Id.* ¶ 9.

Bisignano moved past barriers designed to keep individuals away from the building and advanced up to the Lower West Terrace. *Id.* As members of Congress and staffers were evacuated to secure locations, Bisignano and other rioters ran up to a tunnel on the Lower West Terrace, which led inside the U.S. Capitol building. *Id.* ¶ 10. Bisignano joined other rioters in attempting to force their way into the building through an entrance at the tunnel. *Id.* ¶ 11. As the mob swelled inside the tunnel, and officers inside were being assaulted, Bisignano climbed on a ledge inside the tunnel and waved other rioters into the tunnel to assist in the effort to break into the Capitol building. *Id.* After approximately 40 minutes of struggling with the mob, officers were able to clear the tunnel of rioters, including Bisignano. *Id.*

But Bisignano did not give up in her efforts to breach the building. After being expelled from the tunnel, Bisignano took to a window to the left of the tunnel. *Id.* ¶ 12. As she held this position, Bisignano called out to the crowd, "Break the window! Break the window!" *Id.* When another rioter began hammering at the glass on the window, Bisignano encouraged him, "Do it! Do it!" *Id.* When that did not succeed in breaking the window, Bisignano climbed on to a ledge near the window and assisted a second rioter up to the ledge, who immediately began to bang on the glass with a large object. *Id.* Bisignano helped yet another rioter up to the ledge, and that rioter used a fire extinguisher to smash in the glass of the window. *Id.* The damage to the Capitol from that broken window alone was approximately $1,500. *Id.*

Having achieved her goal of breaching the building, Bisignano joined other rioters in entering the building through the window. *Id.* ¶ 13. Bisignano waved other rioters toward the window and used a bullhorn to encourage them to breach the building. *Id.* On the bullhorn,

Bisignano called out to the crowd, "We need weapons!  We need strong angry patriots to help our boys.  They don't want to leave.  We need protection."  *Id.*  She called out, "We the people are not going to take it anymore.  You are not going to take away our Trumpy Bear.  You are not going to take away our votes."  *Id.*  She proclaimed, "This is 1776!"  *Id.*  Bisignano believed that by breaching the Capitol, she could influence, affect, stop, or delay the official proceeding in Congress to certify the election results.  *Id.* ¶ 14.

On July 27, 2021, Bisignano acknowledged each of these facts as true.  *Id.* at 8 ("Defendant's Acceptance"); *see also* Transcript of August 4, 2021 Plea Hearing, at 23–24; 36.

## II.    Charges and Procedural History

On January 16, 2021, the defendant was charged via complaint with seven offenses.  ECF No. 1.  On January 29, 2021, a federal grand jury returned an indictment that charged the defendant with seven counts:

- Count One: 18 U.S.C. §§ 1512(c)(2) & 2 (Obstruction of an Official Proceeding and Aiding and Abetting);

- Count Two: 18 U.S.C. § 231(a)(3) (Civil Disorder);

- Count Three: 18 U.S.C. §§ 1361 & 2 (Destruction of Government Property and Aiding and Abetting);

- Count Four: 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds);

- Count Five: 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds);

- Count Six: 18 U.S.C. § 1752(a)(4) (Engaging in Physical Violence in a Restricted Building or Grounds); and

- Count Seven: 40 U.S.C. § 5104(e)(2)(D) (Disorderly and Disruptive Conduct in a Capital Building).

ECF No. 10.

On August 4, 2021, the defendant pleaded guilty to Counts One, Two, Four, Five, Six, and Seven of the Indictment.  ECF No. 39.  As part of her plea agreement, Bisignano agreed to cooperate with the United States in the ongoing investigation of the events of January 6.  The United States did not seek a change in her release conditions at the time of the plea.  Transcript of August 4, 2021 Plea Hearing, at 40.  The Court noted that it was "unhappy with the extent to which, for whatever reason, Ms. Bisignano seems to have been, to date, in non-compliance with what I thought were pretty clear orders at various stages in this case"—which are discussed below—but acknowledged that "[t]he government also, I think, is interested in you continuing to cooperate, and it may be that detaining you would be difficult as a result." *Id.* at 40–41.  The Court concluded, therefore, that it would not change her conditions of release pending sentencing. *Id.* at 41.

On May 20, 2022, the defendant filed a motion to withdraw her guilty plea as to Count One of the Indictment.  ECF No. 51.  The United States opposed.  ECF No. 52.  On May 4, 2023, this Court granted the defendant's motion to withdraw her guilty plea as to Count One.  *See* Minute Entry of May 4, 2023.  Trial—on Counts One and Three—is currently set for April 8, 2024.  *See* Minute Entry of July 26, 2023.  The defendant's guilty plea as to Counts Two, Four, Five, Six, and Seven remains undisturbed.

### III.    Detention History, Release Orders, and Bisignano's Persistent Violations

Bisignano was arrested in the Central District of California on January 19, 2021, and an initial appearance took place on the same date in that district.  ECF No. 17 at 1, 16.  At that initial appearance, the government's request for detention was denied, *id.* at 16, and conditions of release were set, *id.* at 17–20.  The United States promptly moved for an emergency stay and review of the detention order, which then-Chief Judge Howell granted the same day.  ECF No. 5.  The Chief

Judge also issued an order that Bisignano be transferred to District of Columbia for further proceedings. ECF No. 6. On January 20, 2021, the defendant reported to the federal building in Los Angeles, California and was taken into the custody of the U.S. Marshall. ECF No. 7. On February 3, 2021, the United States appealed the prior release order and moved to detain Bisignano pending resolution of the instant criminal case. ECF Nos. 12 & 15.

On February 26, 2021, this Court issued an Order Setting Conditions of Release. ECF Nos. 21 & 22. Among the conditions of release, the Court ordered:

- "The defendant must . . . avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Only Speak about pending case with Attorney, Government and people that are directly associated with your case."

- "The defendant must . . . participate in one of the following location restriction programs and comply with its requirements as directed. . . . Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer."

- "No access to social media. No communications with anyone who was at the event on January 6, 2021. Stay away from DC except for Court, Pretrial business or meeting with Counsel."

ECF No. 21 at 2.

Bisignano's pattern of violations of her conditions of pretrial release began as early as July 27, 2021. At that time, the defendant's Pretrial Services Officer in the Central District of California noted that Bisignano had been regularly accessing and using social media. ECF No. 36. Although the conditions of release included no such exception, Bisignano claimed she was using social media to promote her business. At an August 4, 2021, hearing, the Court admonished the defendant: "I think it was pretty crystal clear that I was ordering you to stop using social media altogether." Transcript of August 4, 2021 Plea Hearing, at 41. The Court explained, "I am . . . not

going to change the conditions of your pretrial release, but I am not happy about all of the ways in which what I think were quite crystal clear from the get-go, your behavior has been inconsistent with." *Id.* The Court added, "I am not going to detain you today. I'm not putting you in jail, but I am admonishing you and Mr. Peruto to comply 100 percent going forward, especially now that you've pleaded guilty, to the conditions that are allowing you to stay out of jail until sentencing." *Id.* at 42. The Court concluded, "The one thing you absolutely should not be doing is deciding on your own . . . that there are certain parts of my order that you can disregard." *Id.* at 43.

At that same hearing, the defendant pressed to have limited access to social media for business purposes. Bisignano explained, "[T]hey book me through Instagram. So I had talked in length, you know, like -- I kind of need to show that I do nails. It's been hard for me. So I did ask, no politics, is there any way I could just show -- because they book me on the Instagram." *Id.* The defendant added, "I don't talk about politics anymore." *Id.* The Court modified the conditions of release, on the record, "to permit [Bisignano] to use Instagram for the limited purpose of booking clients." *Id.* at 48. The Court clarified, "I very much expect you to continue not using social media for personal reasons, or the political topics and the like, and the use of Instagram will be limited to your business." *Id.*

On August 27, 2021, Pretrial Services reported that Bisignano had violated her curfew on August 19, 2021. ECF No. 40. The defendant was admonished not to violate this condition by Pretrial Services at the time. *Id.*

Following a defense motion, *see* ECF No. 45, on November 30, 2021, the Court modified Bisignano's conditions of release to remove the condition of home confinement. Minute Entry of November 30, 2021. The Court ordered that "all other pretrial restrictions, including location monitoring and curfew, shall remain in place." *Id.*

On March 1, 2023, Bisignano again violated her conditions of release. *See* ECF No. 58. This violation is substantively discussed in the United States' Response to the Court's Minute Order from March 7, 2023. ECF No. 59. As noted in that filing, Bisignano was brought to Washington, D.C. to testify in another case in this District. *Id.* Rather than obeying the conditions of release, which required her to "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution" and to "only speak about [the] pending case with attorney, government, and people that are directly associated with your case," ECF No. 21, while in Washington, D.C. Bisignano violated multiple conditions by traveling to the DC jail to participate in a "J6 Block Party," discussing her pending case and the case in which she was testifying. ECF No. 59. In addition to this conduct, the United States also noted that it was "aware of an active Twitter account operated by the defendant in violation of Section 7(s), which clearly states 'no access to social media.'" *Id.* Following a May 4, 2023 hearing, the Court modified Bisignano's conditions of release, to add the following conditions, "(1) Defendant is restricted to her residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; and (2) Defendant is prohibited from accessing social media for any purpose." Minute Order of May 4, 2023. However, as discussed next, Bisignano has not heeded the Court's directives, and has continued to violate the conditions of her release.

IV.     **Bisignano's Instant Violations**

As noted briefly in the government filing before the May 4, 2023 hearing, ECF No. 59, and in violation of her original conditions of release, since at least February 2022, Bisignano has maintained an active presence on Twitter using an account that appears to have been created

expressly for the purpose of discussing her involvement in the riot at the Capitol on January 6, 2021.  She also has used Telegram to community with other January 6 defendants and used the accounts of others to access Twitter and participate as a guest in discussions with thousands of listeners.  Some of these activities were brought to the attention of the Court previously, but others were uncovered just recently.

### a.   Violations Reported to Pretrial Services and Reflected in the Violation Report

On January 23, 2024, Pretrial Services alerted the Court to Bisignano's continued violations of the conditions of her release regarding the use of social media.  ECF No. 77.  In particular, Pretrial Services noted that Bisignano participated in a Twitter space with Jake Lang, a defendant in another January 6, 2021 case, *see United States v. Lang*, 21-cr-53 (CJN).  ECF No. 77.  Pretrial Services also reported that Bisignano participated in a Telegram group focused on January 6—"Prisoners Record."  *Id.*

There is open-source information to corroborate this conduct, which violates the Court's conditions that Bisignano have "[n]o access to social media," and "[n]o communications with anyone who was at the event on January 6, 2021."  ECF No. 21 at 2; *see also* Minute Order of May 4, 2023 (reiterating that Bisignano "is prohibited from accessing social media for any purpose").  On January 20, 2024, Bisignano joined, through the phone of another individual, a Twitter space "J6 Support American Patriot Relief we have a j6 er Dire Need."[1]  Exhibit 1.  Bisignano spoke to the assembled group of approximately 2,400 attendees.  *Id.*  Bisignano introduced herself: "Hey guys, so, it's Gina Bisignano, I'm the one by the window."  *Id.*  She continued, "When I went to the Capitol, we went there not knowing any—there was going to be a riot, or anything like that.

---

[1] https://www.youtube.com/watch?v=ZGy78QuZnfs; *see also* https://twitter.com/i/spaces/1djxX-NDQDyEGZ?s=20 (Bisignano's statements beginning at 2:38:08).  All links included in footnotes were last visited January 26, 2024.

That had been my third rally.  And they let us all in, and when we went in, then we were violently attacked."  *Id.*  Bisignano continued, "Nobody knows that we were all allowed in, and we got in and that's when the stormtroopers opened the doors and started beating everybody up."  *Id.*

The United States has also received additional reports, not included in the Pretrial Services report, including an audio recording,[2] reflecting that Bisignano is an active Telegram user and has participated in a Telegram group, "The Prisoner's Record Discussion," including on January 20, 2024.  Exhibit 2.  The screenshot below, on the left, shows Bisignano's Telegram account, including her photograph and her most recent Telegram activity, and reflects her participation in the Telegram group "The Prisoner's Record Discussion."  The screenshot on the right shows a recent post, by Bisignano, in that Telegram group, regarding her prior defense counsel in this case.




---

[2] https://twitter.com/violet__rosie/status/1749273367252017422.

**b. Bisignano's Active Twitter Account "@ginabjan6"**

But Bisignano's use of social media is more extensive than just these most recent reports. Even after the Court reiterated her conditions of release and admonished the defendant at the August 4, 2021 hearing, and after the Court reemphasized that the defendant "is prohibited from accessing social media for any purpose," Minute Order of May 4, 2023, she has continued to use a public, verified Twitter account, @ginabjan6. This account includes 588 posts and reflects it was created in February 2022—meaning that the account was active at the same time the Court admonished Bisignano against using social media at the May 4, 2023, hearing, as previously noted by the United States, ECF No. 59. The home page of Bisignano's Twitter account is shown below; it shows her self-description as a "Jan 6 defendant" and shows that she has almost 900 followers. The account name itself—@ginabjan6—suggests that a primary purpose of the account is to promote her views about January 6 and her status in this case.



Bisignano's most recent Twitter post through this account is from April 19, 2023.  She has "likes" as recently as December 20, 2023, after the Court reiterating her conditions of release on May 4, 2023, Minute Order of May 4, 2023.



Currently available public Twitter posts show that Bisignano has used this account to repeatedly discuss her pending case and January 6 prosecutions more generally, and that she has engaged with other January 6 defendants.  For example, on April 4, 2022, as shown below, Bisignano asked Brandon Straka—another January 6 defendant, *United States v. Straka*, 21-cr-579—to "Contact me" regarding a video podcast Straka proposed to start "just to share the stories of January 6th defendants."

---

[4] https://twitter.com/ginabjan6/likes.



On August 30, 2022, as shown below, Bisignano engaged with another January 6 defendant—Victoria White, *United States v. White*, 21-cr-563. In response to a Tweet from White questioning police activities on January 6, Bisignano asked, "Also why did the officers start hitting [another rioter in the tunnel] and beating him in the head !" Bisignano claimed, contrary to her admissions in court, "we clearly only wanted for our voices to be heard !"



On January 11, 2023, as shown below, Bisignano shared a link to an article describing the withdrawal of her guilty plea. Another January 6 defendant—Couy Griffin, *United States v.*

---

[5] https://twitter.com/ginabjan6/status/1510845542678499329.
[6] https://twitter.com/ginabjan6/status/1564761883273355264.

*Griffin*, 21-cr-92—retweeted the post and added, "Prayers."  Bisignano responded directly to his Tweet, "Thank you Patriot!I was there when you were praying !!!"



<sup>7</sup>

A day later, Bisignano again engaged directly with Griffin on Twitter.  Bisignano had shared an article about her prosecution on Twitter, which included the headline, "Beverly Hills Beautician with Bullhorn Said 'George Soros, You Can Go to Hell' and 'This is 1776' as Capitol Rioters Attacked Police, Feds Say."  Griffin retweeted Bisignano's post, adding, "And this is supposed to be a crime?"  Bisignano responded directly to Griffin by complaining of the photograph the media had selected for the article: "They keep using the same image after i was sprayed by a bystander dressed in a Trump hat."



[8]

On multiple occasions, Bisignano has directly engaged with another January 6 defendant, Pamela Hemphill, *United States v. Hemphill*, 21-cr-555, through Twitter. For example, on March 14, 2023, as shown below, Hemphill posted an image of Bisignano on Twitter with the message, "My friend Gina Bisignano is being disrespected by many in twitter circles and she actually was

friends with Jacob Chansley!  I love you Gina and support you completely!"  Bisignano retweeted

the post, and wrote "Pam thank you love !"



Bisignano has not restricted her communications about January 6 to her fellow rioters.  She

has also engaged directly with the media and with other individuals.  On October 21, 2022, NBC

News reporter Ryan J. Reilly shared a video that had been introduced in another case.  In this

video, which was taken on January 6, Bisignano speaks directly to fellow rioter Daniel Rodriguez

and repeatedly says, "I broke in!"  Months later, on January 12, 2023, Bisignano responded to

Reilly's Tweet to complain that the government was using her "private video."

---

[9] https://twitter.com/ginabjan6/status/1635521925140320259.



[10]

On October 25, 2022, Bisignano posted a video in which a man offscreen was interviewing her.  In the video, an image from which is captured below, she showed off her ankle monitor, and discussed the charges against her.  Bisignano complained that "the charges they pinned on me were astronomical."  The interviewer responded, "It's been, like, two years . . . and they're still after you."  Bisignano looked at the camera, smirked, and said, "Because I'm so dangerous." Exhibit 3.  When the interviewer said that the media loved to talk about it, Bisignano smiled.

---

[10] https://twitter.com/ginabjan6/status/1613681739456733185.



On December 12, 2022, as shown below, Bisignano discussed her withdrawal of her plea

agreement, using that fact to try to persuade another individual to unblock her on Telegram.



In addition to the Twitter space Bisignano participated in recently, her Twitter account

shows several examples of her promoting other January 6 Twitter spaces, including using these

platforms to seek donations for her GiveSendGo fundraising account—another example of

---

[11] https://twitter.com/ginabjan6/status/1585086334519021569.
[12] https://twitter.com/ginabjan6/status/1602512465220157441.

Bisignano using yet another social media forum to discuss the events and prosecution of January 6. For example, on January 16, 2023, as shown below, Bisignano responded to a user who posted a link to a Twitter space titled, "General talk about J6 trails and support," with a link to her GiveSendGo account, with the note, "Click here to Give now to Patriot fundraiser by Gina Bisignano."

[13]

On January 17, 2023, as shown below, Bisignano retweeted a post by the same user with a link to another Twitter space, called "Let's talk about volunteering to assist or adopt a J6er."

---

[13] https://twitter.com/ginabjan6/status/1615097202132811777.



14

Similarly, as shown below, Bisignano has used her @ginabjan6 Twitter account to promote the Telegram account "The Prisoner's Record"—the account that hosts the Telegram group she has surreptitiously participated in—including on February 18, 2023.



15

In addition to discussing her case, engaging with other January 6 rioters, and promoting her fundraising efforts, Bisignano has also repeatedly used her Twitter account to promote January 6 conspiracy theories to her followers.  For example, on January 25, 2023, as shown below, Bisignano shared an article promoting a conspiracy theory alleging a government "cover up" regarding January 6 defendant Ray Epps—*United States v. Epps*, 23-cr-321.

---

[14] https://twitter.com/thegeneral249/status/1615538582248194049.

[15] https://twitter.com/ginabjan6/status/1627155976301461505; *see also* https://twitter.com/ginab-jan6/status/1643793415992401920 (similar post from April 5, 2023).



[16]

Bisignano also retweeted a January 21, 2023 Tweet with an image, shown below, captioned "J6 was an inside job."



[17]

---

[16] https://twitter.com/ginabjan6/status/1618326480618164224.

[17] https://twitter.com/Helenagibs/status/1616772651631902720.

While in Washington, D.C. to testify at a trial in February 2023, Bisignano posted about her trip on her Twitter account, including posting an image showing her outside the U.S. Supreme Court, across the street from the U.S. Capitol building.



[18]

---

[18] https://twitter.com/ginabjan6/status/1630024830153048067; *see also* https://twitter.com/ginab-jan6/status/1636602138230140928 (another post from the trip).

### c. Bisignano's Ongoing Social Media Use Includes Acknowledgements of Her Release Violations

That Bisignano was constantly violating her conditions of release could not be news to her. Of course, this Court has repeatedly reminded her of these conditions at hearings on August 4, 2021 and May 4, 2021, and Pretrial Services has admonished her to comply on separate occasions, *see, e.g.*, ECF No. 40.  Despite these clear and repeated warnings, Bisignano has even directly responded to Twitter posts discussing these very conditions.  On February 5, 2023, another Twitter user stated that "it looks like January 6th Terrorist Gina Bisignano is NOT supposed to be online, or in contact with ANYBODY who also partook in January 6th 2021.  But now, she is on Telegram, AND interacting with J6ers."  The post, shown below, included an image of Bisignano's release conditions.



<sup>19</sup>

---

supervising officer.

( ) (r) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

( ✗ ) (s) No access to social media. No communications with anyone who was at the event on January 6, 2021. Stay away from DC except for Court, Pretrial business or meeting with Counsel. Report weekly as directed by PSA.

Bisignano saw this tweet.  Instead of taking the reminder as an opportunity to conform her conduct

to her release conditions, Bisignano retweeted the post and added, "Oooooh what a threat."



When the user responded that the post was not a threat, Bisignano claimed, as shown below,

"This is Ginas friend lol figure it out Einstein …. Where is Hunter ?"

---

[20] https://twitter.com/ginabjan6/status/1627109028928315392.



²¹

Emboldened, a few days later, on February 28, 2023, Bisignano retweeted a post from another individual, shown below, who said it would be "a shame if [Bisignano's] judge found out" she was violating the conditions of her release.



²²

None of the posts referenced above have any obvious relation to Bisignano's business interests as a salon worker.

²¹ https://twitter.com/ginabjan6/status/1627133885183295489.   In another post on April 3, 2023, Bisignano tweeted, "I'm Gina friend and she can't post anything because of the nazi police.  She's J6er."   https://twitter.com/ginabjan6/status/1643080974375481346.   As discussed further below, this claim is not credible.
²² https://twitter.com/jam6242/status/1630679837949009922.

**ARGUMENT**

I.      **Legal Standard**

      A.  **Release Pending Sentencing**

        Bisignano has been convicted and is pending sentencing on one felony, Count Two (18 U.S.C. § 231(a)(3)), and four misdemeanors, Counts Four (18 U.S.C. § 1752(a)(1)), Five (18 U.S.C. § 1752(a)(2)), Six (18 U.S.C. § 1752(a)(4)), Seven (40 U.S.C. § 5104(e)(2)(D)).   Under Section 3143, a defendant "shall" be detained pending sentencing "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" under conditions.  18 U.S.C. § 3143(a)(1).  That is, where the defendant has been found guilty, the burden is on the defendant to show clear and convincing evidence that she should be released pending sentencing.

      B.  **Release Pending Trial**

        Bisignano is pending trial on two felonies, Counts One (18 U.S.C. §§ 1512(c)(2) & 2) and Three (18 U.S.C. §§ 1361 & 2).[23]  Under Section 3142(e), a defendant "shall" be detained pending trial when "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  18 U.S.C. § 3142(f).  Even after the court has made such a determination, the detention hearing "may be reopened . . . at any time before trial if the judicial officer finds that information

---

[23] Because Count Three is "an offense listed in section 2332b(g)(5)(B)," *see* 18 U.S.C. § 2332b(g)(5)(B), the United States previously moved for detention under 18 U.S.C. § 3142(f)(1). *See* ECF No. 12.

exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

### C.  Revocation of Release

"A person who has been released under [18 U.S.C. § 3142], and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a).  Under the Bail Reform Act, in the case of a violation of the conditions of pretrial release, the United States may move for revocation of an order of release.  18 U.S.C. § 3148(b).  "A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section."  *Id.*  Following a hearing, the Court "shall" order the defendant's release revoked and that the defendant be detained if the Court finds "clear and convincing evidence that the person has violated any other condition of release" and that either (A) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" or (B) "the person is unlikely to abide by any condition or combination of conditions of release."  *Id.*

### D.  Contempt

Section 3148 also provides "prosecution for contempt of court" as one of the available sanctions for a violation of pretrial release conditions.  18 U.S.C. § 3148(a); *see also* 18 U.S.C. § 3148(c) ("The judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release."); 18 U.S.C. § 401 ("A court of the

United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.").

## II.     The Court Should Revoke Bisignano's Release

Bisignano's extensive social media activity, spanning seemingly the entirety of her time on release—and occurring before and after admonitions by this Court—violates multiple conditions of release, including that she "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution," that she have "[n]o access to social media," and that she have "[n]o communications with anyone who was at the event on January 6, 2021."  ECF No. 21 at 2.  This is not the first or second time Bisignano has violated the conditions of her release.  The Court has repeatedly warned her about continued violations.  As the Court told Bisignano in August 2021, "The one thing you absolutely should not be doing is deciding on your own . . . that there are certain parts of my order that you can disregard." Transcript of August 4, 2021 Plea Hearing, at 43.  But that is precisely what Bisignano has done.

Bisignano's conduct while on pretrial release shows either a complete inability to follow the clear—and repeatedly expressed—conditions of her release, or an outright disdain for the Court's authority.  Since being placed on pretrial supervision, it appears Bisignano has been in a near constant state of noncompliance through her open and frequent use of various social media channels to communicate with other January 6 defendants.  Bisignano's willingness to violate the conditions of her release to participate in the promotion of lies and conspiracy theories about the riot she helped lead underscores the seriousness of her violations.  Her recent statement to other January 6 defendants and supporters that "they let us all in, and when we went in, then we were violently attacked" is contradicted by the facts, and by Bisignano's own admissions in Court.  In

her Statement of Offense, Bisignano admitted to approaching the Capitol while stating that it was her intention to "break into Congress."  ECF No. 38 at ¶ 9.  She joined rioters in the tunnel where she and other rioters tried to force their way into the building, past police protecting the entrance. *Id.* ¶ 11.  She aided other rioters attempting to break a window, and cheered them on, yelling, "Break the window!  Break the window!"  *Id.* ¶ 12.  She herself entered the Capitol through that broken window and called out to other rioters for "weapons" and "angry patriots."  *Id.* ¶ 13.  No one let Bisignano into the Capitol.  She broke in, just as she intended to.  That she is lying about it is not itself a violation of her conditions of release, but repeatedly doing so through social media is, and the nature of these lies underscores her dangerousness and lack of respect for this Court.

Moreover, on at least two occasions, Bisignano has seemed to claim that the @ginabjan6 Twitter account is run by a third party.  Bisignano's apparent claim that a "friend" runs the account—an account that Twitter has verified as authentic—strains credulity.  The account is in Bisignano's name and includes selfie photographs of Bisignano, including a photograph from her February 2023 trip to Washington, D.C. and a video in which she speaks directly to the camera in an interview.  Likewise, the account repeatedly uses the first person to discuss personal matters, as in the above-referenced Tweet to Ryan Reilly referring to the posted video as "my private video."  Additionally, though the account handle was not referenced, Bisignano discussed her use of Twitter in a trial in March 2023.  *See* Exhibit 4 (March 1, 2023 Transcript, at 301:18–304:12, *United States v. Badalian*, 21-cr-246-2).  That same day, Bisignano, through her Twitter account, publicly engaged with the same third-party account she had discussed in her trial testimony.[24]

But even if Bisignano's claim was correct, and she was having a friend pose as her on Twitter as an end-run around her conditions of release, such a scheme would hardly be to her

---

[24] *See, e.g.*, https://twitter.com/ginabjan6/status/1630993619434831872.

credit.[25]  Indeed, it would serve only to further underscore Bisignano's understanding and knowing disregard of the Court's clear and repeated orders.  Similarly, that Bisignano joined a Twitter space through the phone of another individual is further evidence that Bisignano knows well that what she is doing is a violation, but that she is nonetheless making efforts to conceal it from the Court. It also suggests that the violations the United States has been able to report in this filing may well be only the tip of the iceberg of Bisignano's violative conduct and efforts to conceal it.

There is no excuse for Bisignano's repeated violations.  There is no justification for her unwillingness to follow this Court's orders.  Pretrial Services has recognized as much in recommending that she be removed from supervision.  Because it is clear that Bisignano has violated this Court's unambiguous release conditions and that she "is unlikely to abide by any condition or combination of conditions of release," 18 U.S.C. § 3148(b), the Court must revoke her release order and detain her pending trial and sentencing.

Although the United States submits that revocation of Bisignano's release under Section 3148(b) is the most appropriate remedy here, the Court may, in the alternative, detain Bisignano pending sentencing under Section 3143.  The United States incorporates without repeating its previous arguments for Bisignano's detention, which apply with even greater force today.  *See* ECF Nos. 12, 15.  As Bisignano has already been convicted of multiple offenses, including one felony, the burden to justify her continued release has shifted to the defendant.  *Compare* 18 U.S.C. § 3143 (governing release or detention pending sentencing), *with* 18 U.S.C. § 3142 (governing release or detention pending trial).  That the Court previously continued Bisignano on the same

---

[25] Nor would it take the conduct out of the realm of violations of her conditions of release, since her conditions also direct her to have "[n]o communications with anyone who was at the event on January 6, 2021."  Even if Bisignano may have, at times, used friends as straw men to get around the Court's orders, the communications are nonetheless taking place.

conditions of release after her guilty plea does not resolve the issue. The Court retains the ability to reopen the detention hearing, 18 U.S.C. § 3142(f), given the changed conditions of Bisignano's repeated violations of her conditions, the withdrawal of her guilty plea, and her public embrace of January 6 conspiracy theories that directly contradict her prior admissions to this Court.

As a final alternative, if the Court is disinclined to order the defendant detained pending trial and sentencing, the Court should hold the defendant in contempt of court and impose a term of incarceration. 18 U.S.C. § 3148(a); *see also* 18 U.S.C. § 3148(c).

## CONCLUSION

For these reasons, the Court should grant the motion, issue a bench warrant for Bisignano, pursuant to 18 U.S.C. § 3148(b), for violating the conditions of her conditions of release, revoke her pretrial release order, and detain her pending sentencing for convicted conduct, including the Section 231 felony, and pending trial on her remaining counts.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     ___/s/_____
ANTHONY W. MARIANO
MA Bar No. 688559
Trial Attorney, Detailee
KIMBERLY L. PASCHALL
D.C. Bar No. 1015665
Assistant United States Attorney
Capitol Siege Section
601 D Street, N.W.,
Washington, D.C. 20530
(202) 476-0319
Anthony.Mariano2@usdoj.gov
(202) 252-2650
Kimberly.Paschall@usdoj.gov