UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 21-cr-036 (CJN) |
| | : | |
| GINA BISIGNANO | : | |
| Defendant. | : | |
| | : | |

**UNITED STATES' REPLY IN SUPPORT OF
MOTION TO REVOKE RELEASE ORDER**

The United States of America, by and through its undersigned attorney, respectfully files this reply in support of its motion, pursuant to 18 U.S.C. § 3148(b), for this Court to issue a bench warrant for Defendant Gina Bisignano for violations of the terms of her pretrial release, to revoke her pretrial release order, and to detain her pending trial and sentencing.

**I.    Bisignano's Twitter Violations**

　　a.　Bisignano's Recent Activity in a Twitter Space

The defendant claims she "did not intentionally take part in a 'Twitter space,'" but believed she was "communicating with [American Patriot Relief]'s board members." ECF No. 82 at 5. The defense claims:

> On January 20, 2024, Ms. Bisignano called S.F. to discuss applying for financial assistance from APR and also the possibility that S.F.'s friend could be of assistance in renting the Tennessee house. S.F. answered the call and informed Ms. Bisignano that she was currently hosting a 'fundraiser.' Ms. Bisignano understood S.F. to mean that she was engaged in an activity for APR and that Ms. Bisignano would have the opportunity to address the APR board, and as such Ms. Bisignano asked to speak to the larger group. At no time did S.F. inform Ms. Bisignano that she was hosting a 'twitter space' and Ms. Bisignano was not aware that she was speaking on a 'twitter space.'"

ECF No. 1–2. But the defense's story is wholly inconsistent with the recording provided to the Court as the government's Exhibit 1. Throughout the defendant's time in the Twitter space, the

defendant makes no mention of APR, no request for direct financial assistance, and does not elaborate on any financial hardship. Exhibit 1. The defendant does say, "I thank all you guys for supporting us," and, at the end of the clip, seemingly in passing, "Like [S]'s been saying, if anybody maybe wants a cute little house to rent in Tennessee, I have one." *Id.* But most of what the defendant discusses in the Twitter space is her upcoming trial, her breach of her plea agreement, and lies about her conduct on January 6, 2021, including the lie that the police "let" her and other rioters break into the building. *Id.* The recording also makes it clear that the defendant was trying to convey a message to another January 6 defendant, Jake Lang, *see United States v. Lang*, 21-cr-53 (CJN). For example, when the host of the Twitter space has the defendant join the group "through [her] other phone," as she introduces Bisignano, the host says, "I'm gonna let her say who she is, umm, and, umm, maybe you guys can all get the message out to Jake, umm, that she didn't get to tell him herself, so here she is." *Id.* Bisignano directly speaks of Jake, saying, for example, "Jake and I were friends actually before January 6," and "Jake has always been a great guy. Jake had no intention in doing anything except for to peacefully assembly." *Id.*

Even if the defense's story were to be credited—and it should not—it would not take the defendant's conduct out of the realm of violations. The Court ordered, among the defendant's conditions of release, "The defendant must . . . avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Only Speak about pending case with Attorney, Government and people that are directly associated with your case." ECF No. 21 at 2. The defendant's consternation in the face of these clear violations is not that she did nothing wrong; it is instead that by communicating indirectly through the phone

2

of another, she expected not to get caught. The Court should not reward the subterfuge, and should hold the defendant accountable by granting the government's motion.

        b.   <u>Bisignano's Other Twitter Use Since May 4, 2023</u>

The defendant's claim that she has not "intentionally used the Twitter application since May 4, 2023," ECF No. 82 at 4, is likewise not credible. The defense rightly notes that, in its motion, the United States identified two December 20, 2023 posts that Bisignano publicly "liked." *Id.*; *see also* ECF No. 80 at 11. But the suggestion that this is the entirety of the conduct is belied by what is public on the defendant's still-active Twitter account right now.[1] While the United States highlighted, as illustrative of the violation, the two most recent "likes," if a viewer continues scrolling down the page, there are more than a dozen posts liked by Bisignano from after the May 4, 2023 status hearing. These include posts about former President Trump and the 2024 presidential election, and posts about the January 6 riot, including posts from other January 6 defendants, as shown below.

---

[1] https://twitter.com/ginabjan6/likes.





To "like" a post requires that an individual view what will be readily identifiable as a Twitter post and then specifically select the heart icon. The suggestion from the defense that Bisignano may have—more than a dozen times—accidentally "liked" a Tweet after being sent a "news article,"

5

ECF No. 82 at 4, is not consistent with the number of Tweets liked by the defendant or even a passing familiarity with the Twitter application and how "liking" works.

II.  **Bisignano's Telegram Violations**

The defendant's attempts to justify her use of Telegram to communicate with others regarding January 6 fares no better.  The defendant protests that her use of Telegram is a part of his religious activity: "In addition to in-person church services, Ms. Bisignano regularly calls into the Prisoner's Record, which is a prayer group hosted by Pastor Hoang Quan."  ECF No. 82 at 3.  As an initial matter, on its own page, the Prisoner's Record does not identify itself as a "prayer group," *id.* at 3, much less an "online Church, *id.* at Ex. 2.  It promotes itself as a "[s]upport [g]roup for [f]amilies persecuted by a tyrannical government," which, among other content, hosts prayers.



The defendant further claims that "the Prisoner's Record is not a 'group focused on January 6' but rather a more general prayer group that has attracted some January 6 defendants."  ECF No.

82 at 5. Despite the defendant's characterizations, the declaration in defendant's Exhibit 2 never asserts that the Prisoner's Record is not focused on January 6, 2021. And rightly so. To make such a claim would be as absurd and baseless as the defendant's recent claim that police "let [her] in" to the Capitol, when she entered through a broken window. But even if the defendant could produce live testimony to make such a claim, this is not a question that requires declarations or live testimony. The public Telegram account for the Prisoner's Record makes it clear exactly what it is, and the United States encourages the Court review it if there is any doubt.[2] This is not a group that has unexpectedly "attracted some January 6 defendants." It specifically collects them and targets them through the content it promotes. The "prayer group" nightly posts that what it is hosting is "Daily J6 updates and Live prayers!," as shown below.



---

[2] https://t.me/s/ThePrisonersRecord.

Even a quick review of the Prisoner's Record page shows a series of posts focused on January 6, 2021, as shown below.





**The Prisoner's Record**

Sunday Feb 4, 2024

220+ J6 families are torn away from their loved ones.

Sadly, the government is holding so many of our J6ers as political hostages, we have had to split this into two posts. (See part 2 below.)

Please pray for our men and women and their families, and help support them if you can. The need is great!


Adams, Justin
Adams, Michael
Alam, Zachary
Alberts, Christopher  -Army
Alford, Russell Dean
Allan, Tommy
Bacon, Noah
Badalian, Edward



**The Prisoner's Record**

Please join us to pray for Hank Muntzer. His trial is finished and he is awaiting the bench verdict this afternoon.

https://t.me/ThePrisonersRecord?livestream

> **Telegram**
> **The Prisoner's Record**
> Support Group for Families persecuted by a tyrannical government.
>
> - Prayers Nightly at 9PM ET and Weekdays 9AM ET
>
> - Updates as news breaks or with prayers



59 👁 EOJ Always, 10:41



The defendant herself knows that the Prisoner's Record is a place for discussions about January 6 cases and defendants, and has known for at least two years, because she called into this Telegram space before to violate this Court's orders in January 2022. *See* Exhibit 6 (Recording of The Prisoner's Record, January 30, 2022). At 1:18:00 into Exhibit 6, the defendant spoke directly

to another January 6 defendant (who she believed was Jacob Chansley—*United States v. Chansley*, 21-cr-003—but was actually Jake Lang, as is later explained in the recording).  At 1:24:34 into the recording, the defendant talked about "when we went there" and that "we know the election was stolen."  At 1:26:22, the defendant spoke about the grand jury testimony that she gave in another January 6 case.  At 1:26:48, the defendant spoke about how "the cops attacked us" and "I was the first one there."  At 1:32:30, the defendant spoke with another individual about how the plea bargains are "horseshit" and, after potentially identifying this individual as another January 6 participant, stated, "we are not supposed to talk to each other, but it's been a year, so . . . " and continued to commiserate with the individual who was, similarly, on pretrial release conditions.

The issue with this violation is not whether the Prisoner's Record includes religious discussions at all, along with its discussions of January 6 cases.  Nor is the question, as the defense tries to make it, whether Telegram constitutes "social media."  The question is whether Bisignano's presence in this Telegram group, where she knowingly communicated with another January 6 defendant—Jake Lang, the same defendant Bisignano tried to send a message to through a Twitter space—violates the conditions of her release, which include not only that she stay off social media, but also that she have "[n]o communications with anyone who was at the event on January 6, 2021."  ECF No. 21 at 2.

That Bisignano has offered an explanation tied up in technicalities about the definition of "social media," when she has so plainly and repeatedly violated the spirit of the restrictions, does not reflect a defendant eager to abide by the restrictions going forward.  The defendant is either unwilling or unable to follow the conditions of her release.  It is not just the government that has come to this inevitable conclusion: those tasked with supervising the defendant agree.  ECF No.

11

77. In light of the continued violations, the Court should grant the requested relief and detain the defendant pending trial and sentencing.

### III. Bisignano's Motion To Modify Conditions of Her Release

Now, as if she has been a model of pretrial release compliance, the defendant asks for the conditions of her release to be *lessened*. The defendant asks both that she be removed from location monitoring and subject only to a curfew, and that she be allowed to use social media for any purpose. ECF No. 82 at 8. There is no basis for the Court to grant the requested modifications.

In fact, the defendant's record of release shows that any time she is given the opportunity to abuse a privilege afforded to her while on release, she will take it. When Bisignano was brought to Washington, D.C. specifically to testify at the trial of another January 6 defendant, she quickly violated the conditions of her release by attending a "J6 Block Party" at the D.C. Jail and discussing her testimony and her case. ECF Nos. 58 & 59. When the Court previously allowed Bisignano the opportunity to use Instagram exclusively to promote her business, she posted a video on TikTok facially designed to promote her business, but that also promoted videos of her engaged in the riot at the U.S. Capitol on January 6. ECF No. 81 & Exhibit 5.

The defendant's motion to lessen the conditions of her release may reflect the inescapable conclusion that, if the circumstances do not change, there is every reason to believe the defendant will continue to violate her conditions, and that the parties and the Court will need to hold further hearings on those violations. But the remedy for such obstinance is detention, 18 U.S.C. § 3148(b), not a release from conditions. Further, the defendant cannot show by clear and convincing evidence that she will not be a danger to the community and that she will continue to appear in the absence of these conditions, 18 U.S.C. § 3143(a)(1). Accordingly, the defendant's motion should be denied.

## CONCLUSION

For these reasons and those stated in the government motion, ECF No. 80, and supplement, ECF No. 81, the Court should grant the motion, issue a bench warrant for Bisignano, pursuant to 18 U.S.C. § 3148(b), for violating the conditions of her conditions of release, revoke her pretrial release order, and detain her pending sentencing for convicted conduct, including the Section 231 felony, and pending trial on her remaining counts. Further, for the reasons stated, the Court should deny the defendant's motion for a modification of the conditions of her release.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:   /s/
        ANTHONY W. MARIANO
        MA Bar No. 688559
        Trial Attorney, Detailee
        KIMBERLY L. PASCHALL
        D.C. Bar No. 1015665
        Assistant United States Attorney
        Capitol Siege Section
        601 D Street, N.W.,
        Washington, D.C. 20530
        (202) 476-0319
        Anthony.Mariano2@usdoj.gov
        (202) 252-2650
        Kimberly.Paschall@usdoj.gov