UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 21-cr-036 (CJN) |
| | : | |
| GINA BISIGNANO | : | |
|               Defendant. | : | |
| | : | |

**DEFENDANT GINA BISIGNANO'S PARTIAL OPPOSITION TO THE GOVERNMENT'S MOTION FOR RULING THAT DEFENDANT BREACHED THE PLEA AGREEMENT**

Defendant Gina M. Bisignano, by and through her undersigned counsel of record, respectfully partially opposes the Government's Motion for Ruling that Defendant Breached the Plea Agreement (Dkt. 98). In support of this opposition, Ms. Bisignano sets forth the following facts and argument.

**I.      Relevant Procedural and Factual History**

On January 29, 2021, Ms. Bisignano was charged, via indictment, with seven counts of criminal wrongdoing associated with the events of January 6, 2021 at the United States Capitol. On August 4, 2021, the government filed a plea agreement in this matter whereby Ms. Bisignano pled guilty to a series of counts, including Count One charging a violation of 18 U.S.C. § 1512(c)(2). This Court accepted Ms. Bisignano's guilty pleas on the same date. Dkt. Entry 8/4/2021.

In March 2022, in separate prosecutions, this Court granted defendant Miller's and Fischer's motions to dismiss pending section 1512 charges finding that their alleged actions on January 6, 2021 did not fall within the scope of section 1512. *United States v. Miller*, 21-CR-

1

119, Dkt. 72; *United States v. Fischer*, 21-CR-234, Dkt. 64.  The Court subsequently granted a similar motion in *United States v. Lang*, 21-CR-53, 6/7/22 minute order.

On May 20, 2022, Ms. Bisignano, via prior counsel Chuck Peruto, moved to withdraw her guilty plea with respect to Count One (the section 1512 charge).  Dkt. 51.  On July 12, 2022, the Court held a hearing on the matter at which time the government took the position that Ms. Bisignano's motion to withdraw her guilty plea put her in breach of her plea agreement.  Dkt. 61 at 8: 17-18 (AUSA Paschall: "We take the position that she is in breach now….").  With the parties agreement, the Court held the motion in abeyance while the Court of Appeals reviewed this Court's decision in *Fischer/Miller/Lang*.  Dkt. 61 at 16:21-24.

On January 19, 2023, AUSA Paschall, AUSA Mariano, and multiple FBI agents met with Ms. Bisignano.  At that time they served her with a subpoena to testify in *United States v. Badalian*, 21-CR-246-2, interviewed her about several topics, and reviewed exhibits from a prior grand jury proceeding in which she participated.  The apparent purpose of this meeting was to prepare Ms. Bisignano to testify at the upcoming trial.  The FBI memo[1] memorializing this meeting does not indicate that Ms. Bisignano was advised that the government no longer was bound by the previously filed plea agreement, including the cooperation section.

On February 20, 2023, AUSA Paschall and AUSA Mariano, along with FBI agents, again met with Ms. Bisignano and presented her with several exhibits for the apparent purpose of again preparing for the upcoming trial in *United States v. Badalian*, 21-CR-246-2.  The FBI memo memorializing this meeting does not indicate that Ms. Bisignano was advised that the

---

[1] All discovery in this case has been produced pursuant to a protective order.  Dkt. 25.  If it would be helpful to the Court to review copies of these memos, the defense will file them under seal pursuant to the protective order.

government no longer was bound by the previously filed plea agreement, including the cooperation section.

On February 26, 2023, AUSA Paschall and AUSA Mariano, with an FBI presence, met with Ms. Bisignano at the Department of Justice in Washington, D.C., for the purpose of preparing her to testify in the upcoming trial in *United States v. Badalian*, 21-CR-246-2. Ms. Bisignano's lawyer was not present during this meeting. During that meeting, Ms. Bisignano reviewed several exhibits with the government attorneys, and apparently discussed a conversation Ms. Bisignano had with her then-attorney Mr. Peruto wherein she explained to government counsel that she "spoke to her lawyer and he advised her to admit to guilt on some of her charges but there is still a charge against her which is out on appeal, and she should not admit guilt to that charge at this time." The FBI memorandum does not state that Ms. Bisignano was advised that the government would not be abiding by the plea agreement.

On March 1, 2023, the government called Ms. Bisignano to testify in *United States v. Badalian*, 21-CR-246-2. Ex. A.[2] During her testimony, government counsel asked Ms. Bisignano about the status of the prosecution against her. *Id.* at 304. Ms. Bisignano explained that she had pled guilty to some charges and moved to withdraw her plea to the 18 U.S.C. § 1512 count. Judge Amy Berman Jackson, expressing some confusion about the status of Ms. Bisignano's case, inquired of government counsel: "Is there a cooperation aspect to the plea agreement?" *Id.* at 306:6-7. To which the government responded "There is, your honor." *Id.* at 306:8. Returning to questioning Ms. Bisignano, government counsel inquired: "as part of that plea agreement, have you agreed to cooperate with the United States in relevant matters?" *Id.* at

---

[2] The transcript in this matter is publicly available via pacer, and therefore is being attached as an exhibit to this opposition.

306:22-23, to which Ms. Bisignano responded in the affirmative. *Id.* at 306:24. Government counsel continued: "And you understand that by cooperating with the United States you may be in a position to help yourself with sentencing, right?" *Id.* at 307:6-8. Ms. Bisignano again responded in the affirmative. *Id.* at 307:9.

On cross-examination, Ms. Bisignano was further asked about her cooperation. Defense counsel asked what sentence Ms. Bisignano believed she would receive without cooperation, and she stated that she thought she would go to jail for 41 months. *Id.* at 365:1-5. Counsel then asked: "So when you come and you testify, if the government thinks you gave them substantial assistance, then they will recommend to your sentencing judge something less than the 41 months. Is that your understanding?" *Id.* at 365:7-10. Ms. Bisignano again responded in the affirmative. *Id.* at 365:11.

On April 7, 2023, the Court of Appeals issued its decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), reversing this Court's decisions in *Fischer/Miller/Lang*. On May 4, 2023, the Court granted Ms. Bisignano's motion to withdraw her guilty plea as to Count One and subsequently granted the defense motion for new counsel and appointed undersigned counsel on July 5, 2023.

On June 28, 2024, the Supreme Court issued its decision in *Fischer v. United States*, 603 U.S. __, 2024 WL 3208034 (2024), vacating the D.C. Circuit's opinion and concluding, consistent with this Court's prior orders, that a violation of section 1512(c)(2) required proof that the defendant interfered with the use in an official proceeding of records, documents, objects, or other things used in the proceeding. *Id*. at *10. The parties subsequently moved to dismiss Count One of the Indictment filed against Ms. Bisignano. Dkt. 94 and 97.

The government has now moved the Court to find Ms. Bisignano in breach of her plea agreement. Dkt. 98.

## II.     Standard of Review

The parties agree that plea agreements are interpreted according to contract law; each party to the agreement should receive the benefit of its bargain. Dkt. 98 at 3; *see United States v. Chase*, 466 F.3d 310, 314 (4th Cir.2006). However, while contract law is useful in interpreting plea agreements, plea agreements are not contracts and contract doctrines do not always apply to plea agreements. *United Sates v. Olsen*, 920 F.2 538, 541 (8th Cir. 1990); *United States v. Zweber*, 913 F.2d 705, 711 (9th Cir. 1990). Indeed, in the context of plea agreements, due process trumps contract law. *See United Sates v. Pelletier*, 898 F.2d 297 (2d Cir. 1990).

## III.    Argument

Section 13 of the plea agreement (Dkt. 39) filed on August 4, 2021 states: "Your client understands and agrees that, if after entering this Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Agreement."

Ms. Bisignano does not contest that her motion to withdraw her guilty plea as to Count 1 was, indeed, a breach of her plea agreement. However, in response to Ms. Bisignano's breach, the government elected to continue to accept the plea agreement's benefits, and as such has waived its right to complain of Ms. Bisignano's breach.

### A.     Applicable Law

Counsel is unaware of a decision from the D.C. Circuit that resolves this matter. However *United States v. Vogt*, 901 F.2d 100 (8th Cir. 1990), presented a similar issue. There,

defendant Vogt entered into a plea agreement with the government whereby he would plead guilty to various reduced drug offenses in exchange for his cooperation with an on-going drug tracking investigation. The plea agreement further required that Vogt provide complete and accurate information about his own criminal activity. During the course of his cooperation with the government, Vogt failed to disclose a series of illegal activities. When the government confronted Vogt about his undisclosed criminal conduct, Vogt acknowledged his lack of candor. Nevertheless, the government called Vogt to testify before a grand jury three times and actually had him testify twice. After Vogt's cooperation had been completed, the government moved the district court to set aside Vogt's plea agreement. The district court concluded that the government waived the right to complain of Vogt's material breach "by continuing to solicit and accept the benefit of the bargain after it learned of the breach." *Id*. at 102. The Eighth Circuit affirmed, finding that "the government's delay in complaining of Vogt's breach and its continued acceptance of the plea agreement's benefits" were sufficient to establish that the government waived its right to complain of Vogt's breach. *Id*. at 102.

Circuit courts have recognized the significance of the Eighth Circuit's reasoning in *Vogt*. *See, e.g., United States v. Melancon*, 972 F.2d 566, 568 (5th Cir. 1992); *United States v. Levi*, 313 F. App'x 571, 573 (4th Cir. 2008) ("[T]he Government's failure to seek to be relieved of its responsibilities under the plea agreement until after the co-defendants' trials were completed did not constitute waiver of the breach, as the Government received no further performance by Levi during this period." (citing *Vogt*)).

The Second Circuit encountered a similar but distinct issue in *United States v. Hon*, 17 F.3d 21 (2d Cir. 1994). There, defendants Hon and Tse were indicted for various drug offenses. Hon entered into a cooperation plea agreement with the government whereby he would provide

6

complete and accurate information including possibly testifying against Tse, and in exchange the government would, amongst other things, moved to reduce his sentence pursuant to Section 5K1.1 of the United States Sentencing Guidelines. *Id*. at 24. Tse then proceeded to trial, and Hon was called as a government witness. Hon's testimony, however, did not go as planned. Out of the presence of the jury, Hon explained that he had been coerced into accepting the plea agreement. *Id*. at 24. The court recessed. Over the next few days, Hon stated that he wanted to withdraw from the cooperation plea agreement. Hon was advised that if he withdrew, the government would treat him as a hostile witness. Hon was further advised that if he asserted his Fifth Amendment rights, the government would obtain an immunity order compelling Hon to testify. The government then did in fact obtain an order compelling Hon to testify under immunity. Upon being informed of the order, Hon stated that he would testify pursuant to the plea agreement, at which time the government informed Hon that he was in breach of the agreement and that the government would not honor its obligations under the agreement. *Id*. When trial resumed and Hon was called to testify, Hon did not assert his Fifth Amendment rights and voluntarily testified. During his direct examination, Hon acknowledged that the government's attorneys told him that they considered the cooperation agreement invalid. *Id*. at 25. Two months after the trial, the government sent Hon a letter stating that they would not honor the cooperation agreement. In response, Hon moved the court for an order compelling the government to honor its obligations under the agreement. *Id*. The court did not expressly rule on Hon's motion, but the government did not move for a downward departure and the court did not compel otherwise. *Id*.

On appeal, Hon argued that he hadn't breached the plea agreement, and therefore the government was duty bound to move for a downward departure. The Second Circuit explained:

7

> Hon's argument is based on the mistaken premise that he fulfilled his entire obligation to the government by testifying against Tse. Hon's testimony, however, was only one aspect of the cooperation agreement. He was also obliged to "cooperate fully" with the government. Although Hon's trial testimony was consistent with the information he had previously given the government, he had forced the government to obtain an immunity order, delayed the trial and required the government to call Hon after the hiatus without preparation. Hon's counsel argues to us that the government's inability to prepare was self-inflicted, since counsel had indicated on the afternoon of April 16 that Hon was willing to testify. But by this time, the government had already decided that the cooperation agreement had been breached, a decision that we regard as justifiable. In light of the delay, inconvenience and uncertainty Hon caused, the government could reasonably have determined that Hon breached his duty to "cooperate fully" under the agreement.

*Id*. at 25. Further, citing *Vogt,* the court explained that the government had shown good faith by immediately indicating that it did not intend to honor the agreement, rather than inducing Hon to testify and only later indicating that it would not honor the agreement. *Id*. at 26.

### B.   The government has waived Ms. Bisignano's breach

After Ms. Bisignano breached her plea agreement on May 20, 2022, government counsel and FBI agents met with Ms. Bisignano on January 19, 2023, February 20, 2023, February 26, 2023, and March 1, 2023. Ms. Bisignano's then-counsel Mr. Peruto was not present for some of these meetings. And documentation of these meetings provided to undersigned counsel in discovery make no mention of any conversation the government had with Ms. Bisignano concerning the status of her plea agreement and the government's recent view that Ms. Bisignano would receive no benefit for her cooperation.

When Ms. Bisignano testified as a government witness, at no time during the course of her testimony did the government raise that Ms. Bisignano was in breach of her plea agreement, that the government would not abide by the plea agreement, or that Ms. Bisignano was mistaken in her belief that she would be receiving some kind of credit for her testimony. Indeed, had Ms.

8

Bisignano testified falsely concerning her cooperation, the government would have had an affirmative duty to correct her testimony. No such correction was made.

Objectively, the government willingly accepted and reaped the benefits of the plea agreement. And indeed, Ms. Bisignano cooperated and did the government's bidding as required. Under basic contract principles, because the government knew of Ms. Bisignano's breach but nevertheless accepted Ms. Bisignano's performance, the government must likewise perform. *See* Restatement (Second) of Contracts § 246(1) (2024) ("[A]n obligor's acceptance or his retention for an unreasonable time of the obligee's performance, with knowledge of or reason to know of the non-occurrence of a condition of the obligor's duty, operates as a promise to perform in spite of that non-occurrence . . . .").

### C. The government's obligations under the plea agreement

Given the *Fischer* litigation, the parties' motions to dismiss Count 1 (Dkt. 94, 97), and the history of this case, Ms. Bisignano only partially opposes the government's motion. Ms. Bisignano intends to plead guilty to Count 3 and is not attempting to force the government to dismiss Count 3 as per the original terms of the plea agreement.

However, given Ms. Bisignano's cooperation, and the facts surrounding her cooperation, the defense believes that the government is bound to move for a downward departure under Section 5K1.1 of the Sentencing Guidelines. Dkt. 39 at 11-12. Further, the defense believes that the government should abide by the term of the plea agreement mandating that the government not oppose Ms. Bisignano's continued conditional release from pretrial detention. Dkt. 39 at 6. Such an outcome would equitably resolve this matter and provide the parties the benefit of their bargain.

///

**IV.     Conclusion**

For the foregoing reasons, Defendant Gina Bisignano respectfully requests that the Court hold the government to its specific obligations under the previously filed plea agreement.

                                         Respectfully submitted,

                                         CUAUHTEMOC ORTEGA
                                         Federal Public Defender

DATED: July 29, 2024          By  */s/ Jonathan C. Aminoff*

                                         JONATHAN C. AMINOFF (Bar No. 259290)
                                         (E Mail:  Jonathan_Aminoff@fd.org)
                                         HOLT ALDEN
                                         (E Mail:  Holt_Alden@fd.org)
                                         Deputy Federal Public Defenders
                                         Office of the Federal Public Defender, C.D. Cal
                                         321 East Second Street
                                         Los Angeles, California, 90012
                                         Telephone: (213) 894-2854
                                         Facsimile: (213) 894-0081

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 21-cr-036 (CJN) |
| | : | |
| GINA BISIGNANO | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify on the 29th day of July 2024, a copy of same was electronically filed using the CM/ECF system, and thus delivered to the parties of record, and pursuant to the rules of the Clerk of Court:

> Kimberly L. Paschall
> Assistant United States Attorney
> D.C. Bar No. 1015665
> 555 4th Street, N.W.
> Room 4116
> Washington, D.C. 20530
> Phone: (202) 252-2650
> Email: Kimberly.Paschall@usdoj.gov

DATED: July 29, 2024          By  /s/ Jonathan C. Aminoff

> JONATHAN C. AMINOFF (Bar No. 259290)
> (E Mail: Jonathan_Aminoff@fd.org)
> Deputy Federal Public Defender
> Office of the Federal Public Defender, C.D. Cal
> 321 East Second Street
> Los Angeles, California, 90012
> Telephone: (213) 894-2854
> Facsimile: (213) 894-0081